WENDY MENDLINGER, EXECUTRIX (ESTATE OF NORMAN MENDLINGER) *v.* STATE DENTAL COMMISSION
(AC 25077)

Lavery, C. J., and Schaller and McLachlan, Js.

Argued May 24—officially released August 24, 2004

*Richard P. Weinstein*, with whom, on the brief, was *Nathan A. Schatz*, for the appellant (plaintiff).

*Rosemary M. McGovern*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Richard J. Lynch*, assistant attorney general, for the appellee (defendant).

*Opinion*

SCHALLER, J. The plaintiff, Wendy Mendlinger, executrix of the estate of Norman Mendlinger, appeals from

the judgment of the trial court dismissing her administrative appeal from the decision of the defendant state dental commission (commission). The commission's decision ordered her to cease owning and operating the professional corporation known as Norman Mendlinger, D.D.S., P.C. (professional corporation), doing business as the Hartford Dental Group (dental practice), either by transferring the estate's shares of stock in the professional corporation to a licensed dentist by July 1, 2003, or by ensuring that, by that date, the professional corporation would no longer operate the dental practice. On appeal, the plaintiff claims that the court improperly concluded that she, as executrix of the estate of a deceased dentist, violated General Statutes § 20-122 by continuing to own and operate the professional corporation.[1] We reverse the judgment of the trial court.

The following facts and procedural history are relevant to the plaintiff's appeal. Prior to his death, Norman Mendlinger, a licensed dentist, owned all the shares of stock in the professional corporation. The professional corporation owned and operated a dental practice located in Hartford. Norman Mendlinger died on October 8, 1999. On December 7, 1999, the Probate Court for the district of West Hartford appointed the plaintiff as the executrix of the estate of Norman Mendlinger. All the shares of stock in the professional corporation remained in the estate of Norman Mendlinger and were under the fiduciary control of the plaintiff. The professional corporation continued to operate the dental practice.

[1] The plaintiff also claims that the court improperly concluded that (1) the commission is authorized to order a disposition of professional service corporation stock and (2) the commission's enforcement of § 20-122 did not violate her due process right to fair warning under the state and federal constitutions. Because we conclude that the plaintiff has not violated § 20-122, we need not address those claims.

On January 29, 2002, the department of public health presented the commission with a statement of charges alleging that the plaintiff owned and operated a dental office in violation of § 20-122. The commission held hearings on March 12, 2002, and March 22, 2002.

On August 26, 2002, the commission issued a decision concluding that, although the initial transfer of professional corporation stock to Norman Mendlinger's estate was authorized by General Statutes § 33-182g, the plaintiff violated § 20-122 by not transferring that stock to a licensed dentist within a reasonable period of time. The commission found that the plaintiff was acting as president of the professional corporation. The commission also found that, while the plaintiff had made minimal efforts to sell the dental practice, it could have been sold within one to two years if reasonable efforts had been made. The commission ordered the plaintiff to cease owning and operating the professional corporation doing business as the dental group either by transferring the estate's shares of stock in the professional corporation to a licensed dentist by July 1, 2003, or by ensuring that, by that date, the professional corporation would no longer operate the dental practice.

On December 24, 2003, after the plaintiff appealed from the commission's decision, the court rendered a judgment dismissing the plaintiff's appeal. The court held that § 33-182g cannot be interpreted to allow an executrix who is not a licensed dentist to hold shares of stock in a dental professional corporation indefinitely because such an interpretation would contravene the mandate of § 20-122, which allows only licensed dentists to operate dental practices. The court further held that "[i]n order for § 33-182g and § 20-122 to operate harmoniously, § 33-182g must be read to permit only the temporary transfer of stock to allow for the orderly transition of the practice." On February 13, 2004, the court denied the plaintiff's motion for reargument and

reconsideration and her motion for a stay of the agency decision pending appeal. On February 23, 2004, the plaintiff filed this appeal.

The plaintiff claims that the court improperly concluded that she violated § 20-122. The plaintiff argues that because § 20-122 expressly permits a dental professional service corporation to own and operate a dental practice and § 33-182g expressly permits a dental professional service corporation to transfer stock to the personal representative or estate of a deceased dentist, she, as the executrix of the estate of Norman Mendlinger, may exercise fiduciary control over the stock without violating any specific time limitation. In contrast, the commission argues that the court properly concluded that the plaintiff violated § 20-122 by continuing to own and operate a dental practice. While the commission acknowledges that § 33-182g permits the transfer of professional corporation stock to the plaintiff, it argues that § 20-122 must be interpreted to impose a reasonable time limit within which the plaintiff must cease owning and operating the dental practice. The commission argues that it is reasonable to interpret § 20-122 as imposing a reasonable time limit because an irrational result will occur if an executrix, who is not a licensed dentist, is allowed to own and operate a dental practice indefinitely. The plaintiff argues that the commission's interpretation of § 20-122 is supported neither by the text nor the legislative history of the statute. We agree with the plaintiff.

"Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes." (Internal quotation marks omitted.) *Barbieri* v. *Planning & Zoning Commission*, 80 Conn. App. 169, 173, 833 A.2d 939 (2003). That deference, however, "is unwarranted when the construction of a statute . . . has not previously been subjected to judi-

cial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Internal quotation marks omitted.) *Secretary of OPM* v. *Employees' Review Board*, 267 Conn. 255, 262, 837 A.2d 770 (2004). In the present case, the relevant statutory provisions previously have been subjected to neither judicial scrutiny nor to a time-tested interpretation by the commission. We therefore are unconstrained by the agency's interpretation of those provisions and our review is plenary. See *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 588, 830 A.2d 164 (2003)("[i]ssues of statutory construction raise questions of law, over which we exercise plenary review").

"The process of statutory interpretation involves a reasoned search for the intention of the legislature." (Internal quotation marks omitted.) *Wasko* v. *Manella*, 269 Conn. 527, 534, 849 A.2d 777 (2004). "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." Public Acts 2003, No. 03-154, § 1; see also *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, 269 Conn. 120, 129 n.16, 848 A.2d. 451 (2004). When we must consider extratextual evidence of the meaning of a statute, we look "to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to . . . common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Wasko* v. *Manella*, supra, 535.

In this appeal, we must consider the court's interpretation of §§ 20-122 and 33-182g. Section 20-122 provides in relevant part: "No person, except a licensed and

registered dentist, and no corporation, except a professional service corporation organized and existing under chapter 594a for the purpose of rendering professional dental services, and no institution shall own or operate a dental office, or an office, laboratory or operation or consultation room in which dental medicine, dental surgery or dental hygiene is carried on as a portion of its regular business . . . ."

Section 33-182g provides in relevant part: "No [professional service] corporation organized under the provisions of this chapter may issue any of its capital stock or permit the transfer of its capital stock on its books to any one other than a person specified in section 33-182c, or the personal representative or estate of a deceased or legally incompetent shareholder. . . ."

The text of § 20-122 permits a professional service corporation, such as the one the plaintiff controls as executrix, to own and operate a dental practice. The text of § 33-182g permits a professional service corporation to transfer its shares of stock to the executrix of the estate of a deceased dentist, such as the plaintiff. Neither the text of § 20-122 nor the text of § 33-182g expressly require the executrix to transfer those shares of stock to a licensed dentist or to ensure that the professional corporation will cease operating a dental practice. Nor does the text of either statute require an executrix to take such action *within a reasonable period of time.*

The commission argues that while § 33-182g allows the transfer of professional corporation stock to the estate of a deceased dentist, to permit an executrix, who is not a licensed dentist, to hold such stock *indefinitely* would conflict with the mandate of § 20-122. The commission argues that § 20-122 must be interpreted as imposing a reasonable time limit because an irrational

result will occur if an executrix, who is not a licensed dentist, is allowed to hold the stock indefinitely.

The commission's argument is refuted by consideration of the relevant legislative history. In 1980, the legislature repealed a statute that expressly imposed a one year time limit on an executor operating the dental practice of a deceased licensed dentist. General Statutes (Rev. to 1979) § 20-121 provided in relevant part: "A surviving spouse or heir of a deceased licensed dentist, or his or her administrator, executor or trustee, may operate a dental office *for not more than one year* following the death of a licensed dentist, provided dentists employed in such office shall be licensed in this state." (Emphasis added.) "[T]he court may not, by construction, supply omissions in a statute or add exceptions or qualifications, merely because it opines that good reason exists for so doing. . . . This is especially so where it appears that the omission was intentional. . . . In such a situation, the remedy lies not with the court but with the General Assembly." (Internal quotation marks omitted.) *Walter* v. *State*, 63 Conn. App. 1, 8, 774 A.2d 1052, cert. denied, 256 Conn. 930, 776 A.2d 1148 (2001).

The commission's argument, moreover, fails to recognize that the legislature was entitled to consider that the statutory scheme governing the Probate Court will not allow a fiduciary to postpone settlement of the estate *indefinitely*. "[O]ne of the primary obligations resting upon an executor or administrator is to effect as speedy a settlement of the estate as is reasonably possible . . . ." (Citation omitted.) *Hall* v. *Meriden Trust & Safe Deposit Co.*, 103 Conn. 226, 233, 130 A. 157 (1925); see also G. Wilhelm, Settlement of Estates in Connecticut (2d Ed. 1996) § 7:30.

As the fiduciary of the estate, the plaintiff acts under the control and supervision of the Probate Court. See

General Statutes § 45a-98; see also G. Wilhelm, supra, §§ 2:15, 2:16. If the plaintiff breaches her duty to settle the estate in a reasonable time period, she must answer to the Probate Court. See *American Surety Co. of New York* v. *McMullen,* 129 Conn. 575, 581, 30 A.2d 564 (1943). Pursuant to General Statutes § 45a-331 (a), the Probate Court has the discretion "to proceed with the settlement of an estate that has been pending for more than ten years." *Appeal from Probate of Bencivenga,* 228 Conn. 439, 440, 636 A.2d 832 (1994). General Statutes § 45a-331 (a) permits the Probate Court to "make all such orders as might have been proper if such settlement had not been delayed." The authority of the Probate Court to order disposition of assets and to proceed with the settlement of an estate refutes the commission's argument that the plaintiff will be allowed to hold the stock indefinitely.

On the basis of the statutory scheme set forth, it is reasonable to conclude that the legislature intended to rely on the Probate Court's authority over the disposition of estate assets and the Probate Court's discretion to determine the time period necessary for settlement of an estate. If the legislature had intended to impose additional requirements or time limitations on estates holding professional corporation stock transferred pursuant to § 33-182g, it easily could have imposed such restrictions in the text of that statute or in the text of § 20-122. We will not intrude on legislative authority by reading such restrictions into the text of those statutes. "Rather, [w]e are bound to interpret legislative intent by referring to what the legislative text contains, not by what it might have contained." (Internal quotation marks omitted.) *Winchester* v. *Northwest Associates,* 255 Conn. 379, 388, 767 A.2d 687 (2001).

On the basis of the text of § 20-122, the text of § 33-182g, the legislature's repeal of § 20-121 and the statutory scheme described previously, we conclude that

§ 20-122 cannot be interpreted to impose a reasonable time limit within which the plaintiff must cease owning and operating the dental practice. We conclude, therefore, that the plaintiff did not violate § 20-122.

The judgment is reversed and the case is remanded with direction to sustain the plaintiff's appeal.

In this opinion the other judges concurred.